UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

KELLY HUBBELL,

        Plaintiff,

    v.

SNOWFLAKE, INC., *a Delaware corporation*,

        Defendant.

Case No. 3:25-cv-00348-AR

**FINDINGS AND RECOMMENDATION**

_____

**ARMISTEAD, United States Magistrate Judge**

Plaintiff Kelly Hubbell, a remote worker and the only female on her sales team, brings gender discrimination, pay equity discrimination, and sexual harassment claims under state law against defendant Snowflake, Inc., her former employer. Hubbell was the highest performer yet was paid less than her male counterparts and was denied a promotion, and after she complained, she was harshly criticized and terminated. Hubbel alleges that her coworkers and supervisor created a hostile work environment by making demeaning and derogatory comments about her as a woman and as a mother. Hubbell signed an arbitration agreement when she began working for

Snowflake yet filed her case in this court under the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 (EFAA), 9 U.S.C. §§ 401-402, which invalidates arbitration agreements when claims for sexual harassment are alleged.

Snowflake now moves to dismiss Hubbell's sexual harassment claim under Federal Rule of Civil Procedure 12(b)(6), contending that she failed to report the alleged harassment and that, as alleged, it is not sufficiently severe or pervasive to constitute a hostile work environment. Should the sexual harassment claim be dismissed, Snowflake moves to compel arbitration of her remaining claims. Alternatively, Snowflake requests that her sexual harassment claim be stayed while her remaining claims are arbitrated. As explained below, the court recommends that Snowflake's motions be denied.

## BACKGROUND

The court recites the relevant facts as alleged in the complaint and in the light most favorable to Hubbell. Snowflake extended Hubbell a written offer of employment as a sales director on June 4, 2019. (Compl. ¶ 7.) Hubbell's offer required her to work remotely in Portland, Oregon, and to sign Snowflake's Employee Proprietary Information and Inventions Assignment Agreement on June 4, 2019. (Cordero Decl. at 5 & Ex. 1, ECF 11.) That Agreement included an arbitration agreement, which provides:

> Any dispute, controversy or claim arising out of or relating to . . . my employment with Company or termination of employment, including in each case any alleged violation of statute, common law or public policy, shall be submitted to and decided by final and binding arbitration. Arbitration shall be administered exclusively by JAMS, and held in San Mateo County, California before a single arbitrator, in accordance with the then-current JAMS rules and the Federal Arbitration Act[.]

(*Id.* at 3.) Hubbell signed the agreement and began working on July 1, 2019.

Page 2 – FINDINGS AND RECOMMENDATION
*Hubbell v. Snowflake*, 3:25-cv-348-AR

Plaintiff alleges that while employed, she experienced pervasive gender-based harassment and mistreatment from her management team and four male coworkers. She faced undermining and insulting comments about her status as a woman or mother, such as: "You wouldn't understand the pressure to make money; you're the secondary earner in your household" or "Are you planning on having more kids soon?" and "Girls, COVID is over; it's time to take off those slippers and put on heels." Also alleged by Hubbell is that she was excluded from team outings like golf because it was presumed that as a woman, she would not be interested or had more important tasks at hand, "like taking care of [her] kids." (Compl. ¶¶ 11-12.)

Despite the harassment from her male coworkers, Hubbell excelled. She consistently met or exceeded her sales quota and was the highest performing salesperson on her team in 2022. In 2023, she learned that she was the lowest paid sales director on her team, earning 20 to 25 percent less than her male counterparts. In October 2023, Hubbell complained to Snowflake's Regional Vice President, Adam Sadowski, about the pay discrepancy. Sadowski responded that nothing could be done until February 2024, when Snowflake was next scheduled to make compensation adjustments. (*Id.* ¶¶ 15-18.)

In December 2023, Hubbell was moved to a new sales team, again with four male counterparts. That month, she again met with Sadowski and asked to be promoted to manage the new sales team. Sadowski laughed and asked how many children she had; a shocked Hubbell responded that she has three children. Sadowski laughed and said that she had enough children to take care of and did not need any more. Based on that interaction, Hubbell understood that Sadowski would not consider her for a promotion due to her status as a mother. (*Id.* ¶ 20.)

Page 3 – FINDINGS AND RECOMMENDATION
*Hubbell v. Snowflake*, 3:25-cv-348-AR

When Snowflake made compensation adjustments in February 2024, Hubbell's pay was increased. When Hubbell met with her direct supervisor, Raymond Navarro, to discuss her salary, she expressed disappointment because she remained the lowest paid sales director on her team, despite having the most experience and being the only female and the highest achieving member. Navarro warned her to drop her gender-based pay equity complaint because it would "piss people off," and implying that her job was at stake. (*Id.* ¶ 22.)

A week later, Hubbell met with Snowflake's Head of North American Sales, Mark Fleming. She reported her gender-based pay equity issue to Fleming, who said he would investigate, but never did. On February 8, Hubbell met with her new supervisor, Alyssa George. At the meeting, George brought up Hubbell's pay complaint, agreed her compensation was "a little low," and explained that because George was new to the supervisory role, she was unsure how to resolve the issue. George then said she would discuss the matter with Sadowski. (*Id.* ¶¶ 24.)

Two weeks later, George informed Hubbell that she discussed her gender-based pay equity complaint with Sadowski, and George told Hubbell that: (1) the pay discrepancy would not be addressed until Snowflake's annual compensation adjustments in February 2025; and (2) George warned Hubbell that the complaint irked "some people" and that Hubbell should proceed with caution. (*Id.* ¶ 25.)

On May 3, 2024, Hubbell emailed George to document their February conversation, including her complaint about being paid 20 to 25 percent less than her male counterparts. A few days later, Hubbell and George met and George said that she felt cornered by Hubbell's email and escalated the situation to Snowflake's Human Resources Department. After their May

Page 4 – FINDINGS AND RECOMMENDATION
*Hubbell v. Snowflake*, 3:25-cv-348-AR

meeting, for the first time, George began to heavily criticize Hubbell's work performance, accusing Hubbell of "coasting" and not being a "team player." (*Id.* ¶¶ 26-28.)

A week later, on May 10, Hubbell submitted a formal, internal complaint against Sadowski for gender discrimination stemming from their December 2023 meeting when Hubbell asked about being promoted. Ten days later, Hubbell submitted a formal, internal retaliation complaint against George concerning George's inadequate response to her gender-based pay equity complaint. Soon after, Hubbell asked to meet with Snowflake's Chief Human Resources Officer; her request was declined. That same day, Hubbell asked to meet with Snowflake's Chief Revenue Officer, Chris Degan; he declined because he was advised not to speak with Hubbell. Hubbell was terminated the next day by email and informed that her complaints against Sadowski and George were dismissed. (*Id.* ¶¶ 29, 33-37.)

Hubbell brings six claims against Snowflake in this action: (1) sexual harassment, ORS § 659A.030(1)(b); (2) sex discrimination in compensation, ORS § 659A.030(1)(b); (3) gender-based pay equity discrimination, ORS § 652.220(1); (4) unpaid wages, ORS §§ 652.220(6), 652.230; (5) whistleblower retaliation, ORS §§ 659A.030(1)(f), 659A.199; and (6) violation of the workplace fairness act, ORS §§ 659A.370. Snowflake moves to dismiss Hubbell's sexual harassment claim under Rule 12(b)(6) and to compel the remaining claims to arbitration. If the motion to dismiss is denied, Snowflake asks that the sexual harassment claim be stayed pending resolution of arbitration.[1]

---

[1] The court conducted oral argument on Snowflake's motions and permitted the parties to submit supplemental briefing. (ECF 30.)

Page 5 – FINDINGS AND RECOMMENDATION
*Hubbell v. Snowflake*, 3:25-cv-348-AR

**DISCUSSION**

The Federal Arbitration Act ("FAA") reflects a "liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citation modified). The court must "compel arbitration of claims covered by an enforceable arbitration agreement." *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 509-10 (9th Cir. 2023) (citing 9 U.S.C. § 3). Through the EFAA, Congress amended the FAA to invalidate arbitration agreements where "conduct constituting a sexual harassment dispute" is alleged. 9 U.S.C. § 402(a). A "sexual harassment dispute" is defined as "a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." 9 U.S.C. § 401(4). The applicability of the EFAA "shall be determined by a court, rather than an arbitrator."[2] 9 U. S.C. § 402(b).

The parties agree that the EFAA exempts plausible claims of sexual harassment from arbitration. (Def.'s MTD at 2, ECF 10; Pl.'s Opp'n at 1, ECF 16.) In its motion to dismiss, Snowflake argues that Hubbell fails to allege a plausible claim and that the EFAA therefore does not apply. Hubbell responds that her sex-based hostile work environment claim is plausible and that the EFAA exempts her entire case from arbitration.

---

[2]　Courts have disagreed whether the proper standard for resolving applicability of the EFAA is plausibility or a more lenient standard of nonfrivolous allegations of sexual harassment. *Compare Mangum v. Ross Dress for Less, Inc.*, 777 F. Supp. 3d 519, 526-27 (E.D.N.C. 2025) (applying Rule 12(b)(6) plausibility standard; collecting cases), *and Yost v. Everyrealm, Inc.*, 657 F. Supp. 3d 563, 585 (S.D.N.Y. 2023) (applying plausibility standard), *with Diaz-Roa v. Hermes Law, P.C.*, 757 F. Supp. 3d 498, 533 (S.D.N.Y. 2024) (applying nonfrivolous standard). Because Snowflake moves to dismiss Hubbell's the sexual harassment/hostile work environment claim under Rule 12(b)(6), the *Twombly/Iqbal* plausibility standard applies to that motion.

Page 6 – FINDINGS AND RECOMMENDATION
*Hubbell v. Snowflake*, 3:25-cv-348-AR

**A.**     *Motion to Dismiss Sexual Harassment Claim*

**1.**     **Legal Standard**

A court will grant a Rule 12(b)(6) motion to dismiss for failure to state a claim when a claim is unsupported by a cognizable legal theory or when the complaint is without sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). Assessing the sufficiency of a complaint's factual allegations requires the court to (1) accept that plaintiff's well-pleaded material facts alleged in the complaint are true; (2) construe factual allegations in the light most favorable to plaintiff; and (3) draw all reasonable inferences from the factual allegations in favor of plaintiff. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Newcal Indus. v. Ikon Off. Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). A plaintiff's legal conclusions that are couched as factual allegations, however, need not be credited as true by the court. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

A claim's plausibility is key to surviving a motion to dismiss. That is, a complaint's factual allegations must "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id.* at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

Page 7 – FINDINGS AND RECOMMENDATION
*Hubbell v. Snowflake*, 3:25-cv-348-AR

Plausibility is not probability—plausibility "asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (quotation marks omitted).

### 2.        Analysis—Sexual Harassment/Hostile Work Environment

Under ORS § 659A.030(1)(b), it is an unlawful employment practice for "an employer, because of an individual's . . . sex . . . to discriminate against the individual in compensation or in terms, conditions or privileges of employment." "Oregon courts look to federal cases construing Title VII for guidance when construing ORS 659A.030." *Tomlinson v. Jackson County*, 345 Or. App. 637, 638 (2025). Courts typically divide sexual harassment claims into two types: quid pro quo and hostile environment. *Id.* at 638-39. Hubbell proceeds here under a hostile work environment theory. (See Pl.'s Opp'n at 11.)

To prove a hostile work environment claim based on sexual harassment, a plaintiff must establish: "(1) the employee was subjected to verbal or physical conduct of a sexual nature, (2) this conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Tomlinson,* 345 Or. App. at 639 (quoting *Frehoo, Inc. v. Bureau of Lab. & Indus.*, 319 Or. App. 548, 558 (2022), *rev. denied*, 370 Or. 789 (2023) (citation modified); *Manatt v. Bank of Am. N.A.*, 339 F.3d 792, 798 (9th Cir. 2003) (under Title VII, plaintiff must show that "the conduct was sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive work environment"). "When determining what constitutes an intimidating, hostile, or offensive working environment, the court applies a totality of the circumstances test." *Tomlinson,* 345 Or. App. at 639 (quoting *Fred Meyer, Inc. v. Bureau of Lab. & Indus.*, 152 Or. App. 302, 309 (1998))

Page 8 – FINDINGS AND RECOMMENDATION
*Hubbell v. Snowflake*, 3:25-cv-348-AR

(citation modified). A plaintiff must show that the workplace environment is both subjectively and objectively offensive. *Tomlinson*, 345 Or. App. at 639 (quoting *Frehoo*, 319 Or. App. at 558). For purposes of this motion, the court accepts that Hubbell subjectively perceived her working environment as offensive and that the alleged conduct was unwelcome.

Cases analyzing Title VII describe the totality of circumstances to include "the frequency of the discriminatory conduct; its severity; whether it is physically threating or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Mattioda v. Nelson*, 98 F.4th 1164, 1176 (9th Cir. 2024) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998)) (citation modified). "The required showing of severity or seriousness of the harassing conduct varies inversely with the pervasiveness or frequency of the conduct." *Id.* at 1175-76 (quoting *EEOC v. Nat'l Educ. Ass'n, Alaska*, 422 F.3d 840, 847 (9th Cir. 2005)) (citation modified). "If the plaintiff claims that a coworker created a hostile work environment through sexual harassment, the employer is liable if the employer knew or should have known of the harassment and failed to take prompt remedial action." *Bearden v. N.W.E., Inc.*, 298 Or. App. 698, 705, *rev. denied*, 366 Or. 64 (2019) (citation modified); *Burrell v. Star Nursery, Inc.*, 170 F.3d 951, 955 (9th Cir. 1999) (holding employers liable for a hostile work environment created by coworkers if management-level employees "knew or should have known" about the harassment).

Snowflake moves to dismiss the sexual harassment claim, advancing three primary arguments: (1) the conduct alleged is not sufficiently severe or pervasive to state a plausible sexual harassment claim; (2) she did not inform management about the alleged conduct of her coworkers and thus fails to plead employer liability; and (3) Hubbell does not allege that the

Page 9 – FINDINGS AND RECOMMENDATION
*Hubbell v. Snowflake*, 3:25-cv-348-AR

statements and conduct were sexual in nature and raises only a gender-based discrimination claim to which the EFAA does not apply. According to Snowflake, Hubbell's alleged "pervasive gender-based harassment and mistreatment" theory falls short of stating a plausible sexual harassment claim. The court disagrees.

In the complaint, Hubbell provides the following examples of statements by her coworkers:

a. "You wouldn't understand the pressure to make money; you're the secondary earner in your household."

b. "You probably got the (meeting/deal/response) because you're a chick."

c. "Are you planning on having more kids soon?"

d. "Why don't you smile more on Zoom calls?"

e. "You probably don't want to attend the team happy hour because you have home duties."

f. "We should assign you to this client because you're female, and it would make us look good."

g. "Girls, COVID is over; it's time to take off those slippers and put on heels."

(Compl. ¶ 11.) Hubbell also alleges that she was excluded or uninvited to sales team outings, such as rounds of golf "under the presumption that as a woman, she wouldn't be interested or "had more important things to do, like taking care of your kids." (*Id.* ¶ 12.) Further, Hubbell contends she was required to choose between attending a gender-specific event or a company-wide networking event with tech partners. (*Id.* § 13.) Also asserted by Hubbell is that Sadowski laughed and asked how many children she had when she inquired about a promotion. (*Id.* ¶ 20.) After reporting Sadowski's conduct and complaining about her pay discrepancy, Hubbell asserts, she was told to drop the matter because her complaint had "irked" or "pissed off" people within

Page 10 – FINDINGS AND RECOMMENDATION
*Hubbell v. Snowflake*, 3:25-cv-348-AR

her organization, her performance subsequently was unfairly criticized, and she was ultimately terminated. (*Id.* ¶¶ 22-37.)

*Severe and Pervasive.* Snowflake argues that the alleged conduct is not severe and pervasive and thus Hubbell fails to plausibly plead a hostile work environment. In Snowflake's view, the handful of comments by her coworkers occurred at unspecified times, emanate from gender stereotypes, and were not accompanied by physical harassment or intimidation and fall short of actionable sexual harassment. (Def.'s MTD at 4, ECF 10; Reply at 3, ECF 25.) Also argued by Snowflake is that none of the gender-based comments by her coworkers and Sadowski are severe enough to "make up for their relative infrequency" and create a hostile work environment. (Def.'s MTD at 14 (quoting *Fried v. Wynn Las Vegas, LLC*, 18 F.4th 643, 649 (9th Cir. 2021) ("the requisite severity for harassing conduct varies inversely with the pervasiveness or frequency of the conduct").)

Although the complaint lacks details about which coworkers made the offending statements and when, Hubbell's team had only four male counterparts. (Compl. ¶ 10.) And viewing the allegations in the light most favorable to Hubbell, she alleges that her coworkers' statements occurred repeatedly throughout her employment and that the specific comments are examples of the offensive she endured. (Compl. ¶¶ 11, 40.) Based on those allegations, the court can reasonably infer that more coworker comments may exist but were not specifically identified in the complaint. *Koala v. Khosla*, 931 F.3d 887, 894 (9th Cir. 2019) (stating that court must "accept the complaint's well-pleaded factual allegations as true, and construe all inferences in the plaintiff's favor") (quoting *Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 864 (9th Cir. 2016)). Additionally, when conduct is alleged to be pervasive, a plaintiff need not plead

Page 11 – FINDINGS AND RECOMMENDATION
*Hubbell v. Snowflake*, 3:25-cv-348-AR

specific dates of the offending conduct. *Dominguez-Curry v. Nev. Transp. Dep't*, 424 F.3d 1027, 1039 (9th Cir. 2005) (explaining that a plaintiff need not "recite precise dates of an employer's discriminatory conduct"). Thus, Hubbell has alleged more than a few isolated incidents of sex-based harassment by her coworkers.

Turning to Sadowski, Snowflake argues that Hubbell's sole encounter is not actionable. Merely invoking Hubbell's status as a mother—a gender-based stereotype—is insufficient, in Snowflake's view, to support a viable claim here because Sadowski's actions were not egregious or sexual in nature. (Def.'s MTD at 11.) Not so. The court must consider "all the circumstances" viewed from the perspective of what a reasonable woman could consider abusive. *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1095 (9th Cir. 2008); *Christian v. Umpqua Bank*, 984 F.3d 801, 809-10 (9th Cir. 2020) (holding district court erred in excluding some events when assessing whether environment was hostile). Sadowski's conduct standing alone may not be severe or frequent, but his conduct is not viewed in isolation. *Tomlinson*, 345 Or. App at 639 (applying totality of circumstances test). In other words, Sadowski's comments about how many children she had and laughing at her when she asked about a promotion, must be viewed together with encouragement by her supervisors to drop her complaints about Sadowski's conduct, exclusions from team outings, discriminatory scheduling, retaliatory critiques of her performance, and her termination. Although "neither the severity nor the frequency of the alleged offensive conduct alone indicates that the hostile-work-environment standard obviously is satisfied," Hubbell's allegations when viewed in totality and giving her the benefit of all reasonable inferences, show that the "severity of frequent abuse is questionable" such that it is inappropriate to resolve her claim at the motion to dismiss stage. *See Mattioda*, 98 F.4th at 1174-77 (holding plaintiff plausibly pleaded hostile

Page 12 – FINDINGS AND RECOMMENDATION
*Hubbell v. Snowflake*, 3:25-cv-348-AR

work environment claim) (citations omitted). Thus, Hubbell has plausibly pleaded the alleged harassment was severe and pervasive and that it altered the conditions of her employment and that, if true, a reasonable woman may have felt similarly.

*Employer Liability.* Snowflake contends that Hubbell does not allege that she reported the harassment by her coworkers to a supervisor or to management. Absent factual allegations describing that it knew or should have known about the harassment from her coworkers yet failed to respond, in Snowflake's view, Hubbell fails to allege that it created a hostile work environment or permitted that offensive and abusive behavior to persist. The court disagrees.

As argued by Hubbell, she alleges harassing conduct not just by her coworkers, but also by people in supervisory roles. When harassment is alleged to have been caused by a supervisor or someone with successively higher authority, under state and federal law, an employer is vicariously liable regardless of whether it knew of the misconduct. *Nichols v. Azteca Rest. Enters., Inc.*, 256 F.3d 864, 871, 875 (9th Cir. 2001); *H.K v. Spine Surgery Ctr. of Eugene*, 305 Or. App. 606, 612 (2020), *rev. denied*, 367 Or. 826 (2021) (discussing employer vicarious liability). That vicarious liability may be overcome with an affirmative defense.[3] *Burrell*, 170 F.3d at 956 (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998), and *Faragher*, 524 U.S. at 807). Courts apply a negligence standard when examining employer liability for coworker harassment and it is the plaintiff's burden to show that the employer "knew or should have known of the harassment and failed to take prompt remedial action." *H.K v. Spine Surgery*

---

[3]    A *Faragher/Ellerth* affirmative defense may be shown by proving that (1) no "tangible employment action" was taken; (2) it "exercised reasonable care to prevent and correct promptly" the conduct at issue; and (3) "the plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities." *Burrell*, 170 F.3d at 955 (quotation omitted).

Page 13 – FINDINGS AND RECOMMENDATION
*Hubbell v. Snowflake*, 3:25-cv-348-AR

*Ctr.*, 305 Or. App. at 612-13 (citing *Faragher*, 524 U.S. at 790). In short, employer liability for a hostile work environment "depends on the identity of the harasser." *Swinton v. Potomac Corp.*, 270 F.3d 794, 803 (9th Cir. 2001).

Here, in addition to the offending comments by her coworkers, Hubbell alleges that Sadowski, the regional vice president, laughed at her when she inquired about a promotion, and that during that encounter, he made demeaning statements about her status as a mother. And Hubbell asserts that her supervisors Navarro and George discouraged her from pursuing her gender-based complaints. Also alleged by Hubbell is that she was subject to sexually discriminatory conduct by supervisors and executives in the form of disinvitations to team outings and discriminatory scheduling for company events. (Compl. ¶ 40.) She contends that Sadowski took tangible employment action against her by refusing to consider her for a promotion for which she was qualified, paid her less than her male counterparts, that her performance was unfairly critiqued and ultimately was terminated because she complained about Sadowski's behavior.

Based on those allegations, Hubbell has sufficiently alleged that vicarious liability applies here. Thus, failing to plead that she reported the alleged harassing conduct of her coworkers is not fatal to her hostile work environment claim at this stage of the case and it is premature to resolve any attempt by Snowflake to establish a *Faragher/Ellerth* affirmative defense. *See, e.g.,* *Boquist v. Courtney*, 32 F.4th 764, 774 (9th Cir. 2022) ("An affirmative defense is grounds for dismissal at the pleading stage only if the plaintiff pleads itself out of court—that is, admits all the ingredients of an impenetrable defense.") (citation modified); *Scott v. Kuhlmann,* 746 F.2d

1377, 1378 (9th Cir. 1984) ("Ordinarily affirmative defenses may not be raised by motion to dismiss[.]").

*Sex- or Gender-Based Harassment.* Snowflake argues that the EFAA exempts only sexual harassment, not traditional gender discrimination claims. According to Snowflake, Hubbell's allegations here make sexual harassment coextensive with gender discrimination, a premise not supported by the EFAA. Treating Hubbell's gender-based pay equity complaint and comments from coworkers about being a mother as sexual harassment, in Snowflake's view, dilutes the distinction between gender- and sexual harassment-based claims in a way not envisioned by the EFAA. (Def.'s MTD at 6-7, Reply at 2, 9 (citing *Van De Hey v. EPAM Sys. Inc.*, 3:24-cv-08800-RFL, 2025 WL 829604, at *4 (N.D. Cal. Feb. 28, 2025).)

*Van De Hey* does not aid Snowflake here. In that case, the plaintiff alleged that she was consistently denied equal pay and that her manager refused to "do anything about it" because he didn't want to risk losing a male employee, that her managers and coworkers were men, a project manager said she was not "as effusive as normal," implying she was emotional, and a coworker said "Asian women have small hands." *Van De Hey*, 2025 WL 829604, at *4. The defendant moved to compel arbitration; the plaintiff sought to keep her case in federal court under the EFAA. *Id.* at *3. The *Van De Hey* court concluded that her allegations "may describe sex discrimination" but did not state a claim of sexual harassment under California law. *Id.* Contrary to Snowflake's suggestion, the *Van De Hey* court did *not* separate out the plaintiff's gender-based pay and promotion allegations or conclude that those allegations could never support a hostile work environment claim. Instead, the court considered those allegations as "part of the 'totality of circumstances'" to determine if the conduct was "severe and pervasive enough to alter the

workplace environment." *Id.* Based on the totality of circumstances—including that "she was repeatedly denied equal pay"—the *Van De Hey* court concluded that the alleged conduct there was not severe or pervasive to state a hostile work environment claim, and the EFAA did not apply. *Id.* at *5. Unlike *Van De Hey*, Hubbell alleges repeated derogatory comments by her coworkers and demeaning and humiliating treatment by her supervisor. As discussed above, viewing Hubbell's allegations in the light most favorable to her, Hubbell has alleged sufficiently severe and pervasive conduct to survive Snowflake's Ruel 12(b)(6) motion.

Furthermore, as Hubbell argues, the EFAA looks to state law to determine what conduct is considered sexual harassment and thus exempt from arbitration. The EFAA unambiguously states that "[t]he term 'sexual harassment dispute' means a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." 9 U.S.C. § 401(4). The court is therefore required to apply Oregon law when evaluating the plausibility of her sexual harassment claim. *See Ding v. Structure Therapeutics, Inc.* 755 F. Supp. 3d 1200, 1213 (N.D. Cal. 2024) (concluding that if plaintiff plausibly pleads a hostile work environment claim under California law, "she pleads a sex harassment dispute within the meaning of the EFAA"); *Turner v. Tesla, Inc.*, 686 F. Supp. 3d 917, 926 (N.D. Cal. 2023) (concluding that gender-based hostile work environment claim plausibly pleaded under California law and thus was sex harassment claim covered under EFAA). Under ORS § 659A.030(1)(b), it is an unlawful employment action to discriminate "because of" sex. And Oregon case law has concluded that "[t]he statute does not require that the unlawful employment practice be 'sexual' in nature to be actionable." *A.L.P. Inc. v. Bureau of Lab. & Indus.*, 161 Or. App. 417, 421 (1999). Case law interpreting Title VII likewise recognizes that the harassing conduct under a hostile work

Page 16 – FINDINGS AND RECOMMENDATION
*Hubbell v. Snowflake*, 3:25-cv-348-AR

environment theory "need not be motivated by sexual desire to support an inference of discrimination on the basis of sex." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998). Rather, the motivation can be a "general hostility to the presence of women in the workplace." *Id.*; *EEOC v. Nat'l Educ. Ass'n, Alaska*, 422 F.3d 840, 844-455 (9th Cir. 2005) (holding that "there is no legal requirement at hostile acts be overtly sex- or gender-specific" and "because of sex" may be based on gender stereotypes). *See also Ding v. Structure Therapeutics, Inc.*, 765 F. Supp. 3d 897, 902-903 (N.D. Cal. 2025) (concluding that New York law "says sexual harassment is conduct involving treating the plaintiff less well than other employees based on her gender" and that a New York court would not apply the EFAA to only cases involving sexual or lewd behavior; distinguishing cases determining otherwise).

In summary, the court concludes that Hubbell adequately has pleaded a hostile work environment claim for purposes of Rule 8 and the applicable standards under *Twombly* and *Iqbal*. *See, e.g.*, *Austin* (distinguishing motions to dismiss from summary judgment motions, reiterating that a *prima facie* case under *McDonnell Douglas* "is an evidentiary standard, not a pleading requirement") (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002)). Hubbell is not required to detail when every offending comment was made and by whom at the pleading stage and more facts may be fleshed out during discovery. Whether Hubbell will be able to establish that the conduct was sufficiently severe and pervasive to create a hostile work environment and if her allegations can survive a *Faragher/Ellerth* affirmative defense are questions for another day. For now, as currently pleaded, when construing all inferences in her favor, the court finds that Hubbell has pleaded a plausible hostile work environment claim against Snowflake. Thus,

Hubbell has pleaded sexual harassment dispute under the EFAA. 9 U.S.C. § 402(a) (providing that the EFAA invalidates a predispute arbitration agreement at the plaintiff's election).

**B.    *Motion to Compel Arbitration***

Snowflake asks the court to stay her sexual harassment claim under 9 U.S.C. § 3, and to compel Hubbell to arbitrate her remaining claims. (Def.'s MTD at 20.) In Snowflake's view, claims two through six lack a nexus to her sexual harassment claim and should be arbitrated. (Def.'s MTD at 20, Reply at 15.) Hubbell counters that under the EFAA, her entire case must stay in this court and that the motion to compel arbitration must be denied. The court's task is to determine whether under the EFAA, claims two through six should be referred to arbitration or if the entire case should remain here.

When resolving issues of statutory interpretation, the court begins with the statutory text. *Tanzin v. Tanvir*, 592 U.S. 43, 46 (2020); *Cheneau v. Garland*, 997 F.3d 916, 919 (9th Cir. 2021 (en banc). If the text is plain and unambiguous, the court must apply the statute according to its terms. *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 188 n.8 (2004); *Carcieri v. Salazar*, 555 U.S. 379, 387 (2009).

> The EFAA provides that:
>
> Notwithstanding any other provision of this title, at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, . . . no predispute arbitration agreement . . . shall be valid or enforceable *with respect to a case* which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute.

9 U.S.C. § 402(a) (emphasis added). The text is clear and unambiguous—arbitration agreements are invalid for entire "case" that relates to a sexual harassment dispute. Contrary to Snowflake's contention, the EFAA does not limit invalidation of the arbitration agreement to discrete "claims"

Page 18 – FINDINGS AND RECOMMENDATION
*Hubbell v. Snowflake*, 3:25-cv-348-AR

of sexual harassment. Rather, the plain text makes clear that invalidation of the arbitration agreement extends to the entire case relating to the sexual harassment dispute.

The Ninth Circuit has not yet provided guidance on this portion of the EFAA. The Sixth Circuit has concluded that the text of the EFAA unambiguously means that "[w]hen a plaintiff files a case that includes a sexual-harassment claim, that case certainly . . . "relates to" a "sexual harassment dispute" and the non-sexual harassment claims may not be compelled to arbitration. *Bruce v. Adams & Reese, LLP*, 168 F.4th 367, 383 (6th Cir. 2026). Most district courts interpreting the EFAA have reached the same conclusion. *See, e.g.*, *Ding*, 755 F. Supp. 3d at 1218-19 ("So, when a complaint includes at least one EFAA covered claim, and the plaintiff elects to invalidate the arbitration agreement, the agreement is invalid as to the whole 'case' to the extent the claims relate to the EFAA-covered dispute."); *Johnson v. Everyrealm, Inc.*, 657 F. Supp. 3d 535, 558-59 (S.D.N.Y. Feb. 24, 2023) ("The text is clear, unambiguous, and decisive to the issue here. It keys the scope of the invalidation of the arbitration clause to the entire 'case' relating to the sexual harassment dispute."); *accord Polen v. API Grp. Life Safety USA, LLC*, 3:25-cv-1196-SI, 2025 WL 3251349, at *5 & n.3 (D. Or. Nov. 21, 2025) (concluding that because plaintiff pleaded a nonfrivolous claim relating to a "sexual assault dispute" the EFAA applied, her claims related to that dispute, and the entire case was exempt from arbitration (collecting cases)). The court finds the rationale of those cases persuasive and concludes that text of the EFAA is unambiguous[4] and that the EFAA exempts from arbitration the entire case to the extent her claims relate to Hubbell's sexual harassment dispute.

---

[4]     Snowflake relies on legislative history to support its position that the EFAA was not intended to exempt unrelated claims or apply to claims that do not involve sexually-charged

Although Snowflake contends that Hubbell's unrelated claims and claims lacking a "nexus" to the sexual harassment claim should be referred to arbitration, it fails to advance a cogent rationale that articulates how claims two through six lack such a nexus. (Def.'s MTD at 20, Reply at 15.) As argued by Hubbell, her claims for sex discrimination, gender-based pay equity discrimination, unpaid wages, retaliation for whistleblowing, and violation of the workplace fairness act share the same basic facts involving harassing and belittling statements, the same nexus of improper or sex-based animus, and resulting in being passed over for a promotion, paid less, and terminated. or are related to her sexual harassment claim. (Pl.'s Opp'n at 20-21.) The EFAA, therefore applies to the entire case and it is exempt from arbitration. Accordingly, the motion to compel arbitration should be denied.[5]

## CONCLUSION

For the above reasons, Snowflake's Motion to Dismiss and Compel Arbitration (ECF 10) should be DENIED.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due within 14 days. If no objections are filed, the Findings and Recommendation will go under advisement on that date. If objections are filed, a response is due within 14 days. When the

---

conduct. (Reply at 14-15.) Because the text of the EFAA is clear and unambiguous, the court must refrain from considering that argument. *Bostock v. Clayton County*, 590 U.S. 644, 673-74 (2020) ("This Court has explained many times over many years that, when the meaning of the statute's terms is plain, our job is at an end.").

[5]    Because the court has determined that the case is exempt from arbitration, it declines to consider the parties' arguments about the validity of the arbitration agreement and Snowflake's motion to strike exhibits 1, 3-4, and 6-8.

Page 20 – FINDINGS AND RECOMMENDATION
*Hubbell v. Snowflake*, 3:25-cv-348-AR

response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED: April 24, 2026.

_____
JEFF ARMISTEAD
United States Magistrate Judge